Palmer A. Hoovestal, Esq.
Hoovestal Law Firm, PLLC
608 Lincoln Rd. West
Helena, MT 59602
P.O. Box 747
Helena, MT 59624-0747
Tel. (406) 457-0970
Fax (406) 457-0475
Email: palmer@hoovestal-law.com
Attorney for Defendant
TERRANCE TYRELL EDWARDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TERRANCE TYRELL EDWARDS,<br><br>　　　　　Defendant. | Cause No. CR 16-103-BLG-SPW<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTIONS *IN LIMINE*** |

Pursuant to L.R. CR 47.2(a), the Defendant hereby submits this brief in support of his motions *in limine*.

## THE CHARGES

Terrance Edwards has been charged by Third Superseding Indictment with the following offenses:

**Count 1:**  Sex trafficking by force, fraud or coercion, in violation of 18

U.S.C. § 1591(a) and (b)(1).  It is alleged that between September 9, 2016, and

September 20, 2016, in Billings and Missoula, Edwards knowingly recruited,

enticed, harbored, transported, provided, obtained, and maintained by any means

an individual, Jane Doe 1, knowing and in reckless disregard of the fact that

means of force, threats of force, fraud, and coercion as defined in 18 U.S.C. §

1591(e)(2), and any combination of such means, would be used to cause Jane Doe

1 to engage in a commercial sex act.

**Count 2:**  Sex trafficking by force, fraud or coercion, in violation of 18

U.S.C. § 1591(a) and (b)(1).  It is alleged that in April and May 2016, in Missoula,

Edwards knowingly recruited, enticed, harbored, transported, provided, obtained,

and maintained by any means an individual, Jane Doe 2, knowing and in reckless

disregard of the fact that means of force, threats of force, fraud, and coercion as

defined in 18 U.S.C. § 1591(e)(2), and any combination of such means, would be

used to cause Jane Doe 2 to engage in a commercial sex act.

**Count 3:**  Transportation of a minor with intent to engage in prostitution, in

violation of 18 U.S.C. § 2423(a).  It is alleged that between September 20, 2016,

and September 21, 2016, in Billings, Edwards knowingly transported Jane Doe 3,

an individual who had not attained the age of 18 years, between North Dakota and

2

Montana, with the intent that Jane Doe 3 engage in prostitution.

**Count 4:**  Transportation of a minor with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a).  It is alleged that between September 20, 2016, and September 21, 2016, in Billings, Edwards knowingly transported Jane Doe 4, an individual who had not attained the age of 18 years, between North Dakota and Montana, with the intent that Jane Doe 4 engage in prostitution.

**Count 5:**  Transportation of a minor with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a).  It is alleged that between September 20, 2016, and September 21, 2016, in Billings, Edwards knowingly transported Jane Doe 5, an individual who had not attained the age of 18 years, between North Dakota and Montana, with the intent that Jane Doe 5 engage in prostitution.

**Count 6:**  Obstruction of sex trafficking investigation, in violation of 18 U.S.C. § 1591(d).  It is alleged that between September 23, 2016, and October 2, 2016, in Billings, Edwards knowingly obstructed, attempted to obstruct, and interfered with and prevented the enforcement of 18 U.S.C. § 1591, by directly and indirectly contacting Jane Doe 1, in violation of 18 U.S.C. § 1591(d).

**Count 7:**  Transportation of a person with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2421.  It is alleged that between September 23, 2016, and September 28, 2016, in Montana and North Dakota,

FRANCINE JOANN GRANADOS, knowingly attempted to intimidate, threaten, and corruptly persuade Jane Doe 1, with the intent to influence, delay, and prevent her testimony in an official proceeding relating to the commission of Sex Trafficking by Force, Fraud or Coercion by Terrance Tyrell Edwards, and aided and abetted so, all in violation of 18 U.S.C. §§ 2 and 1512(b)(1).

**Count 8:**  Transportation of a person with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2421.  It is alleged that on or about September 18 and 19, 2016, Edwards knowingly transported an individual from Washington to Montana, with the intent that the individual engage in prostitution.

**Count 9:**  Distribution of marijuana to an individual under 21 years of age, in violation of 21 U.S.C. §§ 841(a)(1), 859(a), and 844(a).

**Count 10:**  Tampering with a witness, victim or informant, in violation of 18 U.S.C. § 1512(b)(1).  It is alleged that between March 11, 2017, and March 27, 2017, in Billings, Montana, Wyoming, North Dakota, and Minnesota, Edwards knowingly attempted to intimidate, threaten, and corruptly persuade Jane Doe 3, with the intent to influence, delay, and prevent the testimony of Jane Doe 3 in an official proceeding.

Edwards requests the following pretrial rulings.

/ /

4

## ARGUMENT

**1.     The Court should bar the government from using the term "victim" to refer to J.R., S.S.A., K.S., A.S., D.R., B.C., H.C., J.M., S.M., or, in the case of the government's proposed experts and other law enforcement witnesses, to refer generally to women engaged in prostitution.**

Edwards seeks an order cautioning the Government against using the term "victim" to refer to the individuals listed above in statements to the jury or when questioning witnesses during the trial.  The Government should also caution its law enforcement witnesses and experts who may be called against using the term "victim" to refer generally to women engaged in prostitution.  The word "victim" is loaded, conclusory, and sympathy-evoking. The Government should not be permitted to pre-condition the jury to find guilt by continuously using this term during the trial.

One or more of the Government's witnesses may seek to characterize these individuals as "victims."  That is clear from the disclosures that the Government made of its intention to offer expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). The Government intends to call FBI SA James Hardie "to aid the jury in understanding the subculture of pimps and prostitutes."  Among other things, the Government

states in its disclosure letter that Hardie will opine that, "[f]or example, in this case Edwards required *the victims* to call him 'Daddy' which is common vernacular between pimps and prostitutes."  (Italics added.)  Hardie's testimony is addressed further below, but if his testimony is admitted, the term "victim" should be excised.  The Government may also call, as fact witnesses, various police officers who may commonly use the term "victim" as a shorthand, almost automatic, way of referring to a complaining witness.

A prosecutor may not imply that she has extra-judicial knowledge supporting the credibility of a government witness.  In a series of cases stretching back over more than three decades, the Ninth Circuit has disapproved of prosecutorial statements that explicitly or implicitly place the prestige of the government behind a witness by providing personal assurances of the witness's veracity. *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980), cert. denied, 452 U.S. 942 (1981) (reversing conviction, despite the absence of a contemporaneous objection, because prosecutor argued to jury that it should believe a cooperating witness because a detective had been sitting in the courtroom to monitor his testimony).  See generally, *United States v. Brooks*, 508 F.3d 1205, 1210 (9th Cir. 2007) (government improperly vouched for credibility of cooperating witness, inter alia, by eliciting witness's belief that if he lied, the

6

government would "break up my agreement and . . . end up giving me 25 to life");

*United State v. Combs*, 379 F.3d 564, 574-76 (9th Cir. 2004) (prosecutor's

argument that agent was truthful because agent would lose his job if he lied

constituted improper vouching; conviction reversed); *United States v. Rudberg*,

122 F.3d 1199, 1204 (9th Cir. 1997) (statements by prosecutor and questioning of

agent about procedures for sentence reduction under Rule 35 "implied that the

government possessed extra-record knowledge and the capacity to monitor the

truthfulness" of cooperating witnesses; conviction reversed); *United States v.*

*Smith*, 962 F.2d 923, 933-36 (9th Cir. 1992) (prosecutor's closing

argument, that he would not present perjured testimony, and that the court would

not permit him to present false evidence, constituted improper vouching;

conviction reversed); *United States v. Simtob*, 901 F.2d 799, 805-07 (9th Cir.

1990) (prosecutor's mid-trial offer of immunity to witness, made in the presence

of the jury, constituted improper vouching; conviction reversed).  To characterize

these individuals as "victims" would constitute improper vouching and imply that

the witness or the prosecutor has extra-judicial knowledge as to Edwards' guilt.

The Crime Victims' Rights Act defines "victim" as "a person directly and

proximately harmed as a result of the commission of a Federal offense . . ." 18

U.S.C. §3771(e).  Under the statute, there is no "victim" until the jury determines

that a crime has been committed.  Use of the term "victim" carries with it a conclusion about the ultimate issue that the jury must decide.  Use of the term "victim" also unfairly invites the jury to rest its verdict on an emotional basis. A crucial component in assuring a fair trial is that the jury's verdict be based on an objective, dispassionate evaluation of the evidence. See Fed. R. Evid., Rule 403 (court may exclude relevant evidence, if the evidence may lead to unfair prejudice).  Use of the term "victim" not only implies that there is extra-judicial evidence that has convinced the speaker (be it the Assistant United States Attorney or a witness) of the defendant's guilt, but it also confers on the person so described a halo of vulnerability and weakness and thereby injects an impermissible sympathy element into the proceedings.

    **2.**    **The Court should conduct a *Daubert* hearing to assess the FBA SA James Hardie's qualifications, conclusions, reasoning and methodology by which his conclusions are reached, and the relevance of those conclusions, prior to deciding upon the admission of his proposed expert opinion testimony.**

    The Government proposes to call FBA SA James Hardie "to aid the jury in understanding the subculture of pimps and prostitutes, which has its own unique relationship dynamics and vernacular.  The Government proposes that he testify

about the modus operandi of pimps, including the recruitment of prostitutes,

pimps' methods of establishing power and control over prostitutes, the interactions

and relationship dynamics between pimps and prostitutes, as well as the business

of prostitution and the nature of the prostitution "game."

The proposal to offer expert testimony makes it necessary to consider the

admissibility and limits of such testimony under *Daubert v. Merrill Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.  It is particularly

important, given *Daubert*'s assignment of the gate-keeping role to the district

court, that the court make a pre-trial determination as to the admissibility and

scope of the testimony to be offered.

*Daubert* announced the standard for assessing the admissibility of expert

testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must
>
> determine at the outset, pursuant to Rule 104(a), whether the expert is
>
> proposing to testify to (1) scientific knowledge and (2) will assist the trier of
>
> fact to understand or determine a fact in issue.  This entails a preliminary
>
> assessment of whether the reasoning or methodology underlying the
>
> testimony is scientifically valid and of whether that reasons or methodology
>
> properly can be applied to the facts in issue.

*Daubert* was concerned with expert testimony about scientific matters, and this raised a question at the time as to whether it would apply to experientially-based (non-scientific) testimony also.  Six years later, the Court answered the question, holding that the *Daubert* rule would also apply to expert testimony that was experientially based.  *Kumho Tire Co., Ltd. v. Carmichael* , 526 U.S. 137 (1999).  In the years since, courts have affirmed the admission of expert testimony regarding the area of prostitution offered by law enforcement officers, *United States v. Brooks*, 610 F.3d 1186, 1195-96 (9th Cir. 2010) (police officer assigned to vice unit), and persons who have studied prostitution academically, *United States v. Taylor*, 239 F.3d 994, 997-98 (9th Cir. 2001) (Dr. Lee, an "academic expert"); *United States v. Anderson*, 851 F.2d 384, 392-92 (D.C. Cir. 1988) (sociologist).

These cases leave open the questions, however, of whether a particular expert is qualified, and whether the particular proffered testimony, in whole or in part, is supported by solid reasons and methodology, and is relevant in this case. These are the questions that a court must address in performing the gate-keeping function.  *Daubert* does not mandate a gate-keeping hearing.  *United States v. Alatorre*, 222 F.3d 1098 (9th Cir. 2000) (no abuse of discretion in denying defendant's motion for a pretrial hearing as to proposed expert testimony, by an

10

agent, on the value of the marijuana found in car the defendant was driving); *United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir. 2000) (*Daubert* does not require a formal hearing). Nevertheless, the court has a gatekeeping function where expert testimony is concerned. Where a court has completely failed to perform that function, reversal and a new trial may be required. *Mukhtar v. California State University*, 299 F.3d 1053, 1064 (9th Cir. 2002). The gate-keeping function is intended to protect the party, against whom the expert's testimony is to be offered, from weak and unreliable testimony put forward by a purported "expert," for such testimony can impact a jury's assessment of the case quite significantly. The *Alatorre* court, while affirming the conviction, agreed that "it may be appropriate, at least in some cases, to conduct a pretrial or other hearing outside the presence of the jury to assess preliminary questions of relevance and reliability relating to experts," 222 F.3d at 1099. A gate-keeping hearing was held in *United States v. Taylor*, supra, see 239 F.3d at 998. This case, too, is a case in which such a hearing is appropriate.

Edwards therefore requests the court to hold a *Daubert* gatekeeping hearing for FBI SA Hardie.

/ /

/ /

11

**3.     The Court should exclude from evidence Edwards' prior convictions for Promoting Prostitution and the fact that he has been to prison for that offense.**

The Government has provided notice that it intends to offer evidence of Edward's prior state-court convictions for Promoting Prostitution, and the fact that he has been to prison for those convictions.  See *ECF No.* 47.

Rule 404(b) provides, in part, as follows:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"The use of evidence pursuant to [Rule 404(b)] must be narrowly circumscribed and limited and may not be introduced unless the Government establishes its relevance to an actual issue in the case," *United States v. Garcia-Orozco*, 997 F.2d 1302, 1304 (9th Cir. 1993), quoting *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985) (internal quotation marks omitted). The Ninth Circuit uses a four-part test for the application of Rule 404(b).

12

Evidence of other misconduct may be admitted only if:

> (1) the evidence must prove a material element of the offense for which the
> defendant is now charged;
>
> (2) in certain cases, the prior conduct must be similar to the charged
> conduct;
>
> (3) proof of the prior conduct must be based on sufficient evidence; and
>
> (4) the prior conduct must not be too remote in time.

*United States v. Rendon-Duarte*, 490 F.3d 1142, 1144 (9th Cir. 2007); see also,
*United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (citing
*Garcia-Orozco*, supra).

The Government bears the burden of proving that the evidence meets each
of the requirements.  *United States v. Arambula-Ruiz*, 987 F.2d 599, 602-03 (9th
Cir. 1993), citing *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985).  In
seeking to carry its burden, the Government must articulate precisely how the
evidence is relevant to one or more issues in the case.  *United States v.
Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).

Moreover, evidence deemed admissible under Rule 404(b) still must pass
muster under Rule 403, which provides that relevant evidence may be excluded if
its probative value is "substantially outweighed by a danger of . . . unfair

prejudice, confusing the issues . . . or needlessly presenting cumulative evidence."

*Huddleston v. United States*, 485 U.S. 681, 691 n. 8 (1988) (Rule 403 balancing

issue not raised below).

Evaluation of Edwards' Montana state court convictions under the

foregoing standards makes it clear that neither the underlying conduct nor the

convictions should be admitted.  First, the evidence does not prove a material

element of the offense.  The inference that the Government appears to be seeking

to have the jury draw is that the 2011 Missoula case is relevant to showing that

when Edwards developed relationships with J.R. and S.S.A. (Counts 1 and 2), he

acted with the knowledge and intent that they would work for him as prostitutes.

*ECF No.* 47.  The inference boils down to "because he did it in 2011 and 2012, he

must have done it in 2016."  The government's theory for offering the 2011 and

2012 Missoula state court convictions falls short  of constituting "a logical

connection between the knowledge gained as a result of the commission of the

prior act and the knowledge at issue in the charged act."  *United States v.

Hernandez-Miranda*, 601 F.2d 1104 (9th Cir. 1979).  Second, the 2011 and 2012

Missoula conduct is not sufficiently similar to Counts 1 and 2.  As to the third

requirement, we agree that there is sufficient proof of the prior conduct.  Edwards

pled guilty, after all.  On the fourth factor – the requirement that the evidence not

be "too remote in time" – the proffer of the 2011 and 2012 matters is again

deficient.  More than five years have elapsed since Edwards' arrest in 2011.

Finally, the Court must consider the issue in light of Rule 403 and in light of

all the other evidence in the case.  The 2011 and 2012 matters may permit an

inference that Edwards acted as a pimp in 2011 and 2012, and that could,

arguably, be of some slight relevance.  However, there will be plenty of other

evidence coming from J.R. and S.S.A. to show that he acted as a pimp.  To prove

the charges in this case, the Government will need to satisfy the jury as to matters

that go far beyond Edwards' self-identification as a pimp in 2011 and 2012.  The

issues will be whether or not the Government can establish the elements of the

offenses to the satisfaction of the jury – and even if Edwards acted as a pimp in

2011 and 2012, that would not suffice for a verdict of guilty.  The Government

must show that, at the time when Edwards invited J.R. to ride with him to Utah, he

intended for her to engage in prostitution and that he intended to have her work for

him.  The same goes for S.S.A.  The Government must show that he got them to

travel interstate and that he knew that "force, fraud and coercion" would be used

to get them to engage in prostitution.  Proof that Edwards was previously

convicted of offenses, the conduct of which constitutes the very charges in the

present case, will have a devastating impact on the jury's perception of Edwards.

15

When one balances the slight (if any) probative value of the 2011 and 2012 Missoula matters against the severe prejudice that Edwards will suffer if it is admitted, it is clear that neither evidence of the conviction nor evidence of the underlying conduct should be admitted.  This evidence should be excluded under Rule 404(b) and Rule 403.

**4.       The Court should preclude the government from offering the testimony of B.C., T.F., H.C., J.M., and S.M.**

The proposed testimony is set forth in *ECF No.* 125.  B.C. is expected to testify that Edwards talked to her about the possibility of B.C. engaging in commercial sex.  B.C. is expected to testify that she visited and had communications with Edwards while he was incarcerated on the state conviction and would refer to the possibility of B.C. making "fast money," including engaging in commercial sex.

T.F. met Edwards in the spring of 2016 and the two began to spend time together.  T.F., who was 20 years old at the time, is expected to testify that Edwards was aware of her age and provided her marijuana.

J.M. is expected to testify that she met Edwards around July 2016.  In August and September 2016, Edwards proposed that she engaged in commercial sex.

16

S.M. is expected to testify that she met Edwards on Facebook in 2011.  In 2011, Edwards encouraged S.M. to work in the commercial sex industry and they traveled to Texas together.

Edwards objects that the proposed testimony does not prove the elements of the offenses and is therefore not relevant.  It is improper 404(b) evidence for the same reasons outlined above, and is used to prove propensity.  To the extent that it is relevant, its probative value is substantially outweighed by its prejudicial effect and should therefore be excluded.

**5.     Fed. R. Evid., Rule 412, does not apply to evidence of the prostitution activities and commercial sex acts of J.R., S.S.A., K.S., A.S., D.R., B.C., H.C., J.M., S.M., prior to and subsequent to the contacts that they had with Edwards, and he should be allowed to cross-examine on those issues.**

Edwards is charged with sex trafficking.  The evidence shows that K.S., S.J.S., A.C., and possibly others, were engaged in prostitution both before and after they came into contact with Edwards.  The Defense contends that this evidence is relevant to the issue of whether their participation in prostitution resulted from Edwards' use or intended use of force, coercion, and the like.  This evidence may also be relevant as impeachment material to assist the jury in assessing the credibility of these individuals.  To the extent that the Government

17

intends to rely on Rule 412 to prevent the introduction of such proof, the Court

should enter an order holding that Rule 412 is inapplicable.

Rule 412 contains a unique set of requirements designed to protect the

victims and alleged victims of sexual assault. The Rule provides, in part, as

follows:

(a) Prohibited Uses. The following evidence is not admissible in a civil or

criminal proceeding involving alleged sexual misconduct:

(1) evidence offered to prove that a victim engaged in other sexual

behavior; or

(2) evidence offered to prove a victim's sexual predisposition.

(b) Exceptions.

(1) Criminal Cases. The court may admit the following evidence in a

criminal case:

(A) evidence of specific instances of a victim's sexual

behavior, if offered to prove that someone other than the

defendant was the source of semen, injury, or other physical

evidence;

(B) evidence of specific instances of a victim's sexual behavior

with respect to a person accused of the sexual misconduct, if

offered by the defendant to prove consent or if offered by the

prosecutor; and

(C) evidence whose exclusion would violate the defendant's

constitutional rights.

Section 412(c) establishes a special procedure, with notice to the victim, and

requires a pretrial motion and closed hearing for determination of the admissibility

of proposed proffers of other sexual misconduct.

Rule 412 was enacted as The Privacy Protection for Rape Victims Act of

1978, Pub. L. 95-540 ("the Act").  The intent of the Act was to protect rape

victims from being questioned about prior sexual behavior, sparing them

embarrassment and unwarranted public intrusion into their private lives.  The

original version of the bill that became the act applied only to criminal cases

involving rape.  In 1988, however, Rule 412 was expanded to include assault with

intent to commit rape.  In 1994, a further amendment expanded the rule to cover

any proceedings, criminal or civil, involving alleged sexual misconduct.  As the

Advisory Committee notes indicate, "The rule aims to safeguard the alleged victim

against the invasion of privacy, potential embarrassment and sexual stereotyping

that is associated with public disclosure of intimate sexual details and the infusion

of sexual innuendo into the fact-finding process."

19

The allegations in this case, generally involving sex trafficking and interstate travel and transportation in furtherance of prostitution, are not offenses involving "sexual misconduct" as that term is used in Rule 412.  The prostitution activities of these individuals do not involve the type of personal, intimate sexual behavior that Rule 412 was intended to protect against public disclosure.  The evidence will show that  K.S., S.J.S., and A.C. posted photographs of themselves in various states of undress and included with their ads words suggestive of their willingness to engage in sexual contact for a fee.  Rule 412(c) imposes significant procedural requirements, and a party must comply with its requirements before evidence of other sexual misconduct is received.  The rule provides that a closed pretrial hearing must be held, notice must be given to the alleged victim, and the alleged victim must be given an opportunity to participate and be heard.  The Defense believes that the rule is inapplicable here and for that reason have not taken steps to initiate its procedural protections.  To avoid a situation where a proffer of evidence by the Defense is foreclosed because the Government asserts that the Edwards did not comply with the rule, he seeks a pretrial determination as to the applicability of the rule.

/ /

/ /

20

**6.     The Defense should be permitted to argue that Edwards mistakenly believed that K.S., A.S. and D.R. were adults, based on their communications with him.**

The Defense recognizes that under *United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001) the Government doesn't need to prove that Edwards knew or had reason to believe that K.S., A.S., and D.R. were under the age of 18.  The Defense does not intend to argue at trial that Edwards should be acquitted because he had a subjective belief that they were adults.  Instead, Edwards may argue that the evidence is insufficient to permit a finding that he ever intended for them to engage in prostitution.  In this regard, the Defense proposes to question the credibility of K.S., A.S., and D.R.  Edwards' motion under Rule 412, Fed. R. Evid., argued above, touches on this subject.  It is from the discovery that K.S., A.S., and D.R. lied about their ages.  Such misrepresentations are "fair game" for cross-examination.  The Defense should be permitted to go into this area, subject to an instruction that the misrepresentations are admissible only as bearing on the credibility of the witnesses and for no other purpose.

WHEREFORE the Defendant prays that his motions be granted.

/ /

/ /

21

DATED this 12th day of September, 2017.

RESPECTFULLY SUBMITTED:


By: s/ Palmer Hoovestal
      Palmer A. Hoovestal, Esq.
      Attorney for Defendant
      TERRANCE TYRELL EDWARDS


## CERTIFICATE OF COMPLIANCE

I certify that the attached **BRIEF IN SUPPORT OF DEFENDANT'S MOTIONS *IN LIMINE*** is proportionately spaced, has a type face of 14 points or more, and contains 3,537 words.


By: /s/ Palmer Hoovestal

## CERTIFICATE OF SERVICE
## L.R. 1.4(c)(2)

I hereby certify that on September 12, 2017, a copy of the foregoing document was served on the following persons by the following means:

1, 2    CM-ECF

_____    Hand Delivery

  3      Mail

_____    Overnight Delivery Service

_____    Fax

_____    E-Mail

1.    CLERK, UNITED STATES DISTRICT COURT

2.    ZENO B. BAUCUS
      CYNDEE L. PETERSON
      Assistant United States Attorney
      Counsel for the United States of America

3.    TERRANCE TYRELL EDWARDS
      Defendant

By: /s/ Palmer A. Hoovestal
      Palmer A. Hoovestal
      Attorney for Defendant